IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BANKERS LIFE AND CASUALTY COMPANY,**<br><br>**Plaintiff**<br><br>v.<br><br>**RICHARD MILLER, PRESTON PARSONS, RAY SANCHEZ, JOSHUA BERGER, LUKE DINGLEDINE, JASON DLUGOSH AND ADRIAN MONTES,**<br><br>**Defendants.** | Case No. 1:14-cv-3165<br><br>The Honorable Manish S. Shah |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Richard Miller ("Miller"), Preston Parsons ("Parsons"), Ray Sanchez ("Sanchez"), Joshua Berger (Berger), Luke Dingledine ("Dingledine"), Jason Dlugosh ("Dlugosh") and Adrian Montes ("Montes") (collectively "Defendants" unless otherwise referred to individually), respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss the First Amended Complaint of Plaintiff Bankers Life and Casualty Company ("Bankers Life").

The First Amended Complaint alleges the same facts as originally set forth by Bankers Life; therefore, the first three claims in the First Amended Complaint contain the same defects that Defendants exposed in the Original Complaint. The First Amended Complaint adds two new claims: Count IV, alleging misappropriation of trade secrets; and Count V, alleging a breach of the duty of loyalty, both of which are also based on the exact same facts previously alleged in

the Original Complaint. Consequently, all five claims in the First Amended Complaint are still subject to dismissal because the First Amended Complaint did not and could not shore up the the fundamental flaws in Bankers Life's pleading. The facts as now twice alleged by Bankers Life do not give rise to a claim for which relief can be granted, and thus, leave to amend again at this point would be futile.

## I.  BACKGROUND

Defendants, other than Berger, are all Nebraska citizens and residents. (Doc. #40, ¶¶35-42).[1] Defendants all worked in Nebraska for Bankers Life. (*Id*., ¶¶2, 6-22, 35-43). Bankers Life alleges that everything material that occurred in this case happened in Nebraska, including the signing of the agreements, the alleged breaches of those agreements, and the territories covered by those agreements. *See* (*Id.*); *See also* (*Id.*, ¶¶ 56, 62, 68, 85-134; Doc. #'s 40-1 through 40-3, ¶4; Doc. #'s 40-4 through 40-7 ¶5; Doc. #40-14, ¶4; and Doc. #'s 40-15 through 40-16, ¶5). There are seven (7) operative agreements at issue in this case between and among the Defendants and Bankers Life, listed chronologically as follows:

- Branch Sales Manager Contract, executed by Miller on 1/23/2006 (Doc. # 40-1);
- Unit Sales Manager's Contract, executed by Parsons on 11/04/2011 (Doc. # 40-2);
- Agent Contract, executed by Dingledine on 12/16/2011 (Doc. # 40-5);
- Unit Supervisor's Contract, executed by Sanchez on 10/19/2012 (Doc. # 40-3);
- Agent Contract, executed by Montes on 10/23/2012 (Doc. # 40-7);
- Agent Contract, executed by Berger on 01/18/2013 (Doc. # 40-4); and
- Agent Contract, executed by Dlugosh on 3/11/2013 (Doc. # 40-6).[2]

---

[1] The First Amended Complaint alleges that Berger is a resident of Nebraska. However, Berger was personally served with the Summons and Complaint on July 21, 2014, at his apartment in Brighton, MA, where he recently moved. *See* (Doc. #34).

[2] In the First Amended Complaint, Bankers Life added Exhibit P (Parsons' Unit Supervisor Contract executed August 28, 2008), Exhibit Q (Sanchez' Agent Contract executed July 29, 2005), and Exhibit R (Montes' Agent Contract executed November 29,

Bankers Life has an interesting business model that involves a mix of both "employees" (Miller, Parsons, and Sanchez) and alleged independent contractor "agents" (Dingledine, Montes, Berger, and Dlugosh) – all of whom were required to sign agreements containing a restrictive covenant that purports to forbid contact with or solicitation of "any policyholder" of Bankers Life for a two year period following the term of the agreement. (Doc. #40, ¶¶49, 55, 61, 67). Three of the Defendants (Miller, Parsons, and Sanchez) each signed agreements that also discourage solicitation of "any agent, branch sales manager . . . employee, consultant or similar employee…." (Doc. #'s 40-1 through 40-3, ¶21(a)). All of the Defendants left Bankers Life in late September 2013, which means that six of the seven Defendants (Sanchez, Dlugosh, Parsons, Dingledine, Berger and Montes) all worked for less than two years after entering into the restrictive covenants contained in the operative agreements. *See* (Doc. #40, ¶¶7-8, 10-11, 13, 78-83; Doc. #'s 40-2 through 40-7).

Each of the agreements also contains provisions relating to "confidential information," which Bankers Life describes as "customer lists" and "policyholder contact data." *See* (Doc. #40, ¶¶2, 69, 72, 164). Bankers Life pled that the most critical information is the policyholder contact information because that information allows its personnel to meet with customers and "interface" with them. *See* (*Id.*). The Defendants are accused of contacting policyholders in Nebraska with whom they previously dealt, all of whom are identified by name and hometown in the First Amended Complaint, and Bankers Life set forth in detail the particular Bankers Life products they consume. (*Id.*, ¶¶2, 4, 85-131).

## II. PLEADING STANDARDS

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "state a claim

---

2011), all of which, by their terms, have been terminated, superseded and replaced by the documents identified above. *See* (Doc. #s 40-14, ¶26; and 40-15 to 40-16 at ¶27). *See also* (Doc. #'s 40-1 through 40-3, ¶26; Doc. #'s 40-4 through 40-7, ¶27).

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). In resolving a 12(b)(6) motion, all well-pled facts are taken as true, but after assuming the veracity of all these facts, the court must assess whether those factual assertions "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. ARGUMENT

At the heart of the First Amended Complaint are claims based on unenforceable covenants that purport to restrict activities that cannot be restricted in the manner Bankers Life attempts and to designate as "confidential" and "secret" information that is not confidential or a "trade secret." While the various agreements attached to the First Amended Complaint each contain a provision selecting Illinois law as the governing law, this Court's prior decisions make clear that Nebraska law governs the claims in the First Amended Complaint because Nebraska maintains a materially greater interest in the present dispute, and the agreements at issue in this case are repugnant to Nebraska law.

Under Nebraska law, Counts I and III fail to state claims because Nebraska law refuses to enforce or reform the types of facially overly broad non-solicitation provisions dealing with customers and other Bankers Life personnel that are contained in the operative agreements on which these claims rely. Counts II and IV fail because, among other reasons, Bankers Life has now twice published who its policyholders are, where they live, and what products they buy. Count V suffers a variety of defects under Nebraska law, set forth in detail below in Section A.2.

Alternatively, even under Illinois law, all counts against Parsons, Sanchez, Dlugosh, Dingledine, Berger and Montes can be dismissed because those individuals did not receive adequate consideration under Illinois law in exchange for the restrictive covenants that Bankers Life seeks to enforce against them. Aside from that defect under Illinois law, all Counts in the First Amended Complaint further fail for the same or similar reasons that they fail under Nebraska law. Accordingly, under any potentially applicable law, either Nebraska or Illinois, Bankers Life failed to state any claims.

> A. **Nebraska law applies to all Counts in the First Amended Complaint, which fail to state claims under Nebraska law.**

Time and again, this Court has applied well settled choice of law rules and concluded that the parties' choice of a given state's law to govern their agreements was ineffective because application of that law would be contrary to a fundamental policy of a state with a materially greater interest in the issue in dispute. In these cases, which often involved restrictive covenants similar to those at issue in this case, the Court recognized that when defendants live and work in a state different from the state whose law was selected to govern, the state where the defendants live, work and are alleged to have committed violations of the agreements maintains a materially greater interest in the outcome of the dispute.

For instance, in *LKQ Corp. v. Fengler*, 2012 WL 1405774 (N.D. Ill. April 14, 2011) the Court held that an Illinois choice of law provision was invalid where LKQ had sued a former employee, Fengler, for alleged violations of restrictive covenants in a confidentiality, non-competition and non-solicitation agreement. In *LKQ Corp.*, the parties disputed whether Illinois or California law should govern the analysis and merits of LKQ's claims, even though the parties' agreement contained a choice of law provision that selected Illinois law as the governing

substantive law. *Id.* at *3-4. The Court explained the two-part choice of law analysis as follows:

> In a diversity case like this one, the Court applies the choice-of-law rules of the forum state to determine which state's substantive law will govern. Illinois courts have adopted the approach set forth in the Restatement (Second) of Conflict of Laws, which provides that a contract's choice-of-law provision will govern **unless**: (1) the chosen state has no substantial relationship to the parties or the transaction; **or** (2) application of the chosen law would be contrary to a fundamental public policy of a state with a materially greater interest in the issue in dispute.

*Id*. (internal citations and quotes omitted and emphasis added).

The Court then found that California law should govern, notwithstanding the agreement's selection of Illinois law because, *inter alia*, Fengler lived in California and "all of the work" that Fengler performed was performed in California. *Id.* at *5. Even though LKQ maintained a principal place of business in Illinois and drafted the agreement in Illinois, those facts were insufficient for the Court to uphold the parties' choice of Illinois law because the Court determined that under §187(2), California had the materially greater interest than Illinois in the application of California law to the dispute. *See Id*. at *3-5.

This Court has consistently employed the same analysis outlined and applied in *LKQ Corp.* to decide that despite the parties' attempt to select a governing law, the selected law would not be given effect. *See, e.g., Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009 (N.D. Ill. 2009) (disregarding parties' contractual choice of Florida law and concluding Illinois had materially greater interest in dispute because the insurance agent involved in dispute was located in Illinois, did business in Illinois, the customers allegedly solicited or serviced were located in Illinois, and actions alleged to be in breach of agreement occurred in Illinois); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern. Inc*., 616 F. Supp. 2d 805, 816 (N.D. Ill. 2009) (applying Restatement (Second) of Conflict of Law, §187 and invalidating parties' choice of Florida law to govern enforceability of non-compete where, despite Del Monte's incorporation in Florida,

employee was employed and worked in Illinois). This case is no different.

As alleged in the First Amended Complaint, at all material times, all of the Defendants were citizens and residents of Nebraska. (Doc. # 40, ¶¶35-43). All of the Defendants performed their work in Nebraska. (*Id.*). Each agreement attached to the First Amended Complaint names Nebraska as a primary territory to which the agreement applies. (*Id.*, ¶¶6-12; Doc #'s 40-1 through 40-3,¶4; Doc. #'s 40-4 through 40-7, ¶5). All of the alleged activities and "breaches" are claimed to have taken place in Nebraska, including the alleged contacting of Nebraska policyholders. (Doc. #40, ¶¶84-131). Without question, application of Illinois law would contravene Nebraska's materially greater interest in this dispute and its fundamental policy against non-competition and non-solicitation clauses like those at issue in Bankers Life's First Amended Complaint and contained in the operative agreements. Therefore, applying the Court's prior reasoning in *LKQ Corp.*, *Brown & Brown*, and *Del Monte* to the analogous facts of this case leads to the inescapable conclusion that Nebraska law applies to the merits of Bankers Life's claims.

**1. The non-solicitation provisions of Counts I and III are overly broad, unenforceable, and cannot be reformed.**

The Supreme Court of Nebraska has repeatedly held that a covenant not to compete in the employment context is valid "only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and had personal contact." *See Prof'l Bus. Servs. Co. v. Rosno*, 268 Neb. 99, 105, 680 N.W.2d 176, 181 (Neb. 2004) (non-compete that extended to all of company's customers was unenforceable); *see also Mertz v Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (Neb. 2001) (covenant not to compete not limited to clients the employee dealt with or

personally contacted held unenforceable as a matter of law.) Unlike Illinois courts, Nebraska courts refuse to modify overly broad covenants; they either enforce them as written or not at all. *See CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 339, 518 N.W.2d 652, 656 (Neb. 1994); *Vlasin v. Len Johnson & Co., Inc.*, 235 Neb 450, 450, 455 N.W.2d 772, 776-77 (Neb. 1990).

Each of the Non-Competition/Non-Solicitation clauses in the operative agreements attempts to prohibit the Defendants from dealing either with "any policyholder of the Company," or with "any agent, branch sales manager . . . employee, consultant or similar employee." *See* (Doc. #'s 40-1 through 40-3, ¶21 (a) and (c); Doc. #'s 40-4 through 40-7, ¶24 (a) and (c)). Consequently, they are all facially overbroad and entirely unenforceable as matter of Nebraska law. *See Prof'l Bus. Servs.*, 268 Neb. at 105, 680 N.W.2d at 181; *Mertz*, 261 Neb. at 712, 625 N.W.2d at 204. The restrictive covenants cannot be modified under Nebraska law, because "[i]t is not the function of the courts to reform unreasonable covenants not to compete solely for the purpose of making them legally enforceable." *CAE Vanguard,* 246 Neb. at 339, 518 N.W.2d at 656. Accordingly, Counts I and III should be dismissed with prejudice.

2.  **Counts II, IV, and V fail to state claims because Bankers Life published its "confidential" information.**

Bankers Life claims its "customer lists" and "policyholder contact data" are its most sensitive and crucial "confidential and trade secret information." *See* (Doc. #40, ¶¶ 60, 72). Yet, page after page of the First Amended Complaint reveals the names and locations of Bankers Life policyholders and all of the specific products these individuals purchased from Bankers Life. *See* (Doc. #40, ¶¶ 84-131). Under Nebraska law, "[c]ourts are reluctant to protect customer lists to the extent that they embody information that is readily ascertainable through public sources." *First Express Services Group, Inc. v. Easter*, 286 Neb. 912, 926, 840 N.W.2d 465, 475 (Neb.

2013) (citation omitted). *A fortiori*, a publicly available list is neither a trade secret nor confidential. *See Id. See also Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701, 709, 634 N.W.2d 774, 782 (Neb. 2001) (same).

Customer contact information that may be gleaned through either a simple telephone call or Internet search is not confidential, nor is it a trade secret. *See Id*. Undoubtedly, there is nothing confidential about the list of customers and products that Bankers Life has now made known to the world. *See Jessup v. Luther*, 277 F.3d 926, 927-28 (7th Cir. 2002) (explaining that judicial records are public and trade secrets may be disclosed by publication); *accord The Pork Group, Inc. v. Hastings Pork,* 2010 WL 427987 *1 (D. Neb. Feb. 1, 2010) ("documents filed in court in connection with a pending case become public records").

Nebraska, in particular, has a narrow view of what constitutes a trade secret. Consequently, the other information that Bankers Life claims is "confidential" or "trade secrets" – such as a "date of birth" or "coverage" information or even "social security numbers" – is not afforded such protection under Nebraska law. *See* (Doc. #40, ¶¶ 1, 69, 72); *See also First Express*, 286 Neb. at 925, 840 N.W.2d at 474 ("Nebraska's statute greatly narrows the definition of a trade secret: [U]nder the literal terms of the ... language, if an alleged trade secret is ascertainable at all by any means that are not improper, the would-be secret is peremptorily excluded from coverage under the Act.") (internal quotations omitted). In *First Express*, the Nebraska Supreme Court determined that crop insurance policyholder information that was unique to each policyholder, but that was nonetheless "ascertainable by proper means," was not a trade secret because the individual policyholders had all of the information, which "could be obtained through a simple telephone call." *See Id.* at 926, 840 N.W.2d at 474.

In this case, Bankers Life pled that the most critical "confidential and trade secret

information" is the policyholder contact information because that information allows its "agents" to meet with customers and "interface" with them. *See* (Doc. #40, ¶¶2, 69, 72) ("Indeed, Defendants could not have performed any of this work . . . without such information."). Bankers Life specifically singled out the policyholder "contact information" and "contact data" as the most crucial element to Counts II, IV and V. *See* (Doc. #40, ¶¶69, 164, 180-181, 190). Thus, Counts II and IV fail because the information claimed to be confidential "trade secrets" is neither secret nor confidential.

Count V is split into two segments. In Count V, Bankers Life alleges that Miller, Parsons, and Sanchez downloaded "confidential and trade secret information," and also alleges they either attempted to induce or did induce other agents to leave Bankers Life. *See* (Doc. #40, ¶190 (1) and (2)). Both bases fail to state claims under Nebraska law.

First, there is no confidential or trade secret customer information as alleged in ¶190(1) and, even if there was, the First Amended Complaint lays out that very same information in painstaking detail, forfeiting any protection that Bankers Life attempted to claim.

Second, Nebraska law recognizes that an employee, before termination of his employment, is entitled to make arrangements to compete. *West Plains, LLC v. Retzlaff Grain Co., Inc.*, 927 F.Supp.2d 776, 785 (D. Neb. 2013). Specifically, an employee may also join together with other current employees to form a new, competing business. *See Cudahy Co. v. American Laboratories, Inc.*, 313 F. Supp. 1339, 1347-48 (D. Neb. 1970) (dismissing claim under Nebraska law for solicitation of co-employees where there were no suggestion of a scheme to leave employers without key personnel and employees "could leave Cudahy's employ any time they wanted to"). Here, as alleged Count V and elsewhere, any and all of the employees allegedly solicited, could all leave any time they wanted to, and they did. *See* (Doc. # 40, ¶¶77-

4836-8988-1373. 2                                   10

83; (Doc. Nos. 40-1 through 40-3, ¶ 20(a) and 40-4 through 40-7, ¶ 22(a) (all stating that either party may terminate the contract "at will").

Under Nebraska law, all Counts fail to state claims for relief and should be dismissed. Defendants expect that Bankers Life will argue that Illinois law applies to the claims in the First Amended Complaint. In any event, even under Illinois law, the First Amended Complaint still failed to state any claims.

> B. **Applying Illinois law still warrants dismissal of all claims.**

Under Illinois law, the First Amended Complaint suffers from at least four fundamental defects. *First*, all claims against Parsons, Dlugosh, Sanchez, Dingledine, Berger, and Montes fail because the agreements upon which those claims rely lack adequate consideration. *Second*, Counts I and III fail because Illinois courts also refuse to enforce overly broad non-solicitation provisions like those that Bankers Life relies on for Counts I and III, plus Bankers Life does not enjoy the kind of "near permanent relationships" with customers required under Illinois law to support Count III. *Third*, Counts II and IV fail because Bankers Life shared all of the information that it simultaneously claims is "confidential" and "secret," and, like Nebraska, Illinois law does not otherwise support Counts II or IV. *Fourth*, Count V fails because half of the claim for the alleged breach of duty of loyalty is based on the same facts as Counts II and IV (and therefore either unsupported or preempted under Illinois law), and the other half of Claim V is based on allegations that are internally inconsistent, and therefore cannot be taken as true.

> 1. **All claims against Parsons, Dlugosh, Sanchez, Dingledine, Berger, and Montes lack consideration.**

This Court recently reaffirmed that "Illinois courts have repeatedly held that there must be at least two years or more of continued employment to constitute adequate consideration in

support of a restrictive covenant." *Instant Tech., LLC v. DeFazio*, 2014 WL 1759184, *14 (N.D. Ill. May 2, 2014) (citations omitted). The Court recognized that many recent Illinois appellate cases have likewise held that the "substantial period of time" for an individual's employment required to support adequate consideration is two years or more. *See Id.* at 14 (citations omitted). The Court also acknowledged that Illinois courts hold "the two-year requirement applies equally to factual situations where the restrictive covenant is part of a new employment offer and to those where an employer amends an existing employment relationship." *Id.* at *14 (noting Illinois courts reject distinction between pre- and post-hire covenants).

According to the First Amended Complaint, Sanchez, Dlugosh, Dingledine, Parsons, Berger, and Montes all lasted less than two years at Bankers Life after Bankers Life required them to sign the restrictive covenants.[3] Sanchez agreed to the restrictive covenants on October 19, 2012, and left within a year. (Doc. #40, ¶¶8, 16, 79; Doc. #40-3 at ¶9). Dlugosh lasted barely six (6) months. (Doc. #40, ¶¶11, 19, 82; Doc. # 40-6). Dingledine and Parsons worked for less than two years after entering into the restrictive covenants. (Doc. #40, ¶¶7, 10, 78, 81; Doc. #'s 40-2 and 40-5). Montes and Berger did not even make it a year. (Doc. #40, ¶¶9, 12, 17, 20, 80, 83; Doc. #'s 40-4 and 40-7). Consequently, the restrictive covenants upon which all of the claims against Sanchez, Dlugosh, Parsons, Dingledine, Berger, and Montes depend provide no basis for any recovery under Illinois law. Thus, all claims against these six defendants should be dismissed with prejudice. All claims may also be dismissed against all Defendants for the additional reason that Illinois, like Nebraska, does not enforce overly broad covenants, and the

---

[3] Bankers Life attempted to correct this obvious pleading defect by attaching additional agreements to the First Amended Complaint, which by their own terms have been terminated and superseded and are no longer in force and effect. *See* (Doc. #s 40-14, ¶26; and 40-15 to 40-16 at ¶27); *see also* footnote 2, *supra*. *See also* (Doc. #'s 40-1 through 40-3, ¶26; Doc. #'s 40-4 through 40-7, ¶27). *See also Fifield v. Premier Dealer Services, Inc*., 2013 IL App (1st) 120327 (explaining that the United States District Court for the Northern District of Illinois explicitly rejects arguments that draw distinctions based on an employer's amending an existing employment relationship).

information claimed to be confidential is not actually confidential.

### 2. Counts I and III fail because the non-solicitation provisions are overly broad, and Bankers Life does not have near permanent relationships with its customers.

Illinois courts and this Court agree that overly broad non-solicitation provisions like the ones at issue in Counts I and III are not enforceable. Non-solicitation provisions addressing customers are overly broad as a matter of Illinois law where they try to prohibit contact with any customer, regardless of whether the former employee had contact with them during the course of employment. *See Brown,* 592 F. Supp. 2d at 1045-46 (noting "Illinois courts will not enforce a provision that prohibits former employees from soliciting customers that they never had contact with while working for their former employer" and finding that the non-solicitation clause in an employment agreement prohibiting solicitation of "any customer," regardless of whether the employee had any involvement or relationship with that customer during employment is unenforceable under Illinois law) (citations omitted). Likewise, non-recruitment provisions are overly broad where they purport to cover employees far beyond the scope that is reasonably necessary. *See Brown & Brown*, 592 F.Supp.2d at 1046; *Pactiv Corp. v. Menasha Corp.*, 261 F. Supp. 2d 1009, 1015 (N.D. Ill. 2003) (ban on hiring any of company's worldwide management employees overly broad and unreasonable under Illinois law).

In this case, Bankers Life seeks to restrain Defendants from communicating with either "any Bankers Life policyholder" or with "any agent, branch sales manager …employee, consultant or similar representative . . . ." *See* (Doc. #40, ¶¶ 49, 55, 61, 67, 172; Doc. #'s 40-1 through 40-3, ¶21(a); Doc. #'s 40-4 through 40-7, ¶24(a)). Facially, these restrictions are exactly the kind of overly broad covenants that Illinois courts will not abide. *See Brown & Brown*, 592 F.Supp.2d at 1046; *Pactiv Corp.,* 261 F. Supp. 2d at 1015.

Separately, dismissal of Count III is proper because there is no protectable interest in the customers identified in the First Amended Complaint. Under Illinois law, there are two ways an employer can establish a legitimate business interest sufficient to support a restrictive covenant: (1) by showing that it has a "near-permanent relationship" with its customers, and that but for his employment, the employee would not have had access to those customers; or (2) by showing that the employee acquired the employer's confidential information and attempted to use that information for his own benefit. *Brown & Brown,* 592 F. Supp. 2d at 1044-45 (citation omitted). Because Bankers Life's information is not "confidential" nor a "trade secret" the second prong is inapplicable. *See* Section B. 3, *infra*.

Under the first prong, "a near-permanent relationship with customers is generally absent from businesses engaged in sales." *Brown & Brown,* 592 F. Supp. 2d at 1044-45 (citation omitted). "When the employer's business is sales of a non-unique product, its customers also do business with its competitors, are generally known to competitors, or are ascertainable by reference to telephone or specialized directories, the near permanency test will not be satisfied." *Id.* at 1045 (finding no near permanent relationship where "there was considerable fluidity in customer lists" and "insurance industry is highly competitive, [. . .] customers often move their business to other entities or even do business with various entities simultaneously when it is to their financial benefit to do so"). *See also Rapp Ins. Agency, Inc. v. David W.K. Baldree*, 231 Ill.App.3d 1038, 1042 (Ill. Ct. App. 1992) ("the nature of most general insurance policies is somewhat transient. . . . [g]ranted, many such relationships endure over lengthy periods of time; however, most are easily cancelled within relatively short time periods and depend on constant periodic renewals"). As in *Rapp,* Bankers Life policies depend on constant periodic renewals that must be accomplished every year. (Doc. #40, ¶5).

Moreover, Bankers Life pled that the policyholders who were allegedly solicited in this case are policyholders who purchased policies that were "sold to them by Defendants when [Defendants] were affiliated with Bankers Life." (Doc. #40, ¶2). This admission exposes a critical defect in the First Amended Complaint and further supports Defendants' argument on this point.

In *Rapp*, the customer information that was alleged to have been taken by the defendant was the information of customers with whom the defendant dealt. *See Id.* at 1042. Importantly, the defendant in *Rapp* had only been employed with the Rapp agency for three years. *See Id.* The court reasoned that because the customers' relationship could therefore not have exceeded three years, those customers relationships *were not* "near permanent" relationships. *See Id.* In this case, like *Rapp*, Parsons, Dlugosh, Dingledine, Sanchez, Berger, and Montes were all employed under their restrictive covenants for less than three years. *See* (Doc. # 40, ¶¶7-12, 78-83). In fact, none of these Defendants were allowed access to any "confidential information" about the customers they are alleged to have contacted unless and until Bankers Life had extracted these Defendants' assent to the restrictive covenants. *See* (Doc. #40, ¶70; Doc. #'s 40-2, 40-3) ("Bankers Life insisted upon Defendants' agreement to the contracts described in this Complaint as a precondition to giving Defendants access to the information described above, as well as to the positions Defendants held"). Therefore, Bankers Life had insufficient time to form the "near permanent relationships" with these customers required under Illinois law.

**3. Counts II and IV may be dismissed because there is no "confidential information" at stake under Illinois law.**

As shown above in Section A.2, the information Bankers Life claims is "confidential" is not. In fact, by claiming out of the gate that "Bankers Life sells products, typically to the 65-

and-older demographic," Bankers Life also identified all of its "prospective customers" too, and simply confirmed what Illinois courts already know: most insurance customers "could be found in the phone book and randomly contacted by any insurance agent." *See* (Doc. #40, ¶¶ 1, 72); s*ee also Rapp* at 1043, ("[I]nsurance customers . . . more often than not, will voluntarily disclose information about their policies in the hopes of obtaining better deals . . . . Rapp wants this information, which may be liberally distributed by its very own customers to competing agents, to be classified, in the case of [Defendant], as a trade secret or confidential information . . . . [t]he information is out there to be found by any persistent agent. It is neither a secret nor confidential.").

Because "[t]here is no protectable interest where a business' customers are known throughout the industry," Bankers Life incorrectly asserts that the identity of its customers are entitled to protection. *See Del Monte*, 616 F. Supp. 2d at 820. Moreover, customer lists and other customer information are not considered trade secrets under Illinois law when they can be easily duplicated by reference to telephone directories or industry publications. *Office Mates 5, North Shore, Inc. v. Hazen, et al.*, 599 N.E. 2d 1072, 1085, 234 Ill. App.3d 557, 575 (Ill. Ct. App. 1992). Illinois courts have found that where customer information is readily available to competitors through normal competitive means, no protectable interest exists. *Id*. at 576, 599 N.E.2d at 1085. Bankers Life's policyholder information (current or "prospective") is similarly "neither secret nor confidential" under the reasoning of *Rapp, Del Monte,* or *Office Mates 5,* or as pled in this case. *See* (Doc. #40, ¶¶2, 84-131).

    4.  **Count V fails to state a claim under Illinois law.**

Count V's bifurcated allegations against Miller, Parsons, and Sanchez for breach of the duty of loyalty fare no better under Illinois law. *See* (Doc. #40, ¶¶190). Half of Count V relies

on allegations surrounding putative "trade secrets." (*Id*., #40, ¶ 190 (1)). While Defendants do not concede the information Bankers Life claims is a trade secret actually is a trade secret, under Illinois law, if the information allegedly downloaded is a trade secret, then the portion of Count V that depends on the existence of a "trade secret" is preempted by the Illinois Trade Secrets Act, 765 ILCS 1065/8(a) (the "ITSA"). *See Hecny Transportation, Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005); *Del Monte,* 616 F.Supp.2d at 822 (common law claims arising from alleged misappropriation of trade secrets are preempted by ITSA); *Lucini Italia Co. v. Grappolini*, 231 F.Supp.2d 764, 768 (N.D.Ill. 2002) ("If the common law claims rely on the trade secret facts, they are preempted and will be dismissed."). The first half of Count V relies on the very same same alleged misappropriation of "trade secrets" as Counts II and IV and thus invokes the preemptive force of ITSA as to that portion of Count V. *See* (Doc. # 40, ¶ 190 (1)).

To the extent the remainder of Count V relies on allegations that Miller, Parsons, and Sanchez allegedly solicited co-workers to sever agent relationships with Bankers Life while employed by Bankers Life, the First Amended Complaint is inconsistent in terms of who allegedly solicited whom. *See* (Doc. # 40, ¶ 190 (2)). In one breath, Bankers Life alleges that Miller, Parsons and Sanchez solicited each other, and other agents of Bankers Life, including but not limited to the other remaining Defendants. *See* (Doc. # 40, ¶75). With only seven Defendants in total, it seems implausible, if not mathematically impossible, that everyone solicited everyone else.

In yet another breath, Bankers Life alleged each of these Defendants only solicited others outside of their group. *See* (*Id.*, ¶¶23). "Factual allegations must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 545. In this case, Bankers Life alleged in one place that every Defendant solicited every other Defendant, and then alleged

elsewhere in the First Amended Complaint that something different than that happened. *See Bezi v. Camacho*, Case No. cv- 11-0677, 2012 WL 5519386 at * (C.D. Calif. Sept. 27, 2012) (recommending dismissal where "Plaintiff's inconsistent characterizations [. . .] render it impossible to determined what actually happened") (citing and quoting *Twombly*, 550 U.S. at 545, for the proposition that "[f]actual allegations must be enough to raise a right to relief above a speculative level").

## IV.   CONCLUSION

Defendants Richard Miller, Preston Parsons, Ray Sanchez, Luke Dingledine, Jason Dlugosh, Joshua Berger, and Adrian Montes respectfully request that their Motion to Dismiss be granted as set forth herein.

Dated this 15th day of September, 2014.

        RICHARD MILLER, PRESTON PARSONS, RAY SANCHEZ, LUKE DINGLEDINE, JASON DLUGOSH, JOSHUA BERGER AND ADRIAN MONTES, Defendants,

By: *s/David A. Yudelson*
    Margaret C. Hershiser, NE Bar #19545
    *Admitted Pro Hac Vice*
    David A. Yudelson, NE Bar #23257
    KOLEY JESSEN P.C., L.L.O.
    One Pacific Place, Suite 800
    1125 South 103rd Street
    Omaha, NE 68124-1079
    (402) 390 9500
    (402) 390 9005 (facsimile)
    margaret.hershiser@koleyjessen.com
    david.yudelson@koleyjessen.com

    *and*

    Joseph P. Kincaid, Esq. (ARDC No. 6202639)
    Julie D. Miller, Esq. (ARDC No. 6297205)
    Swanson, Martin & Bell, LLP
    330 North Wabash Avenue, Suite 3300
    Chicago, Illinois 60611
    (312) 321-9100
    (312) 321-0990 – Fax
    jkincaid@smbtrials.com
    jmiller@smbtrials.com

Attorneys for Defendants.

## CERTIFICATE OF SERVICE

On this 15th day of September, 2014, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

*s/David A. Yudelson*
David A. Yudelson