UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BANKERS LIFE AND CASUALTY COMPANY,

    Plaintiff,

    v.

RICHARD MILLER, PRESTON PARSONS, RAY SANCHEZ, JOSHUA BERGER, LUKE DINGLEDINE, JASON DLUGOSH, and ADRIAN MONTES,

    Defendants.

No. 14 CV 3165

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Bankers Life and Casualty Company sells insurance, typically to people over 65. Defendants are former employees who left Bankers Life to work for a competitor. Bankers Life alleges that, prior to leaving, defendants downloaded highly confidential, proprietary information, and used that information to solicit Bankers Life's customers. Bankers Life also alleges that defendants induced others to quit their jobs at Bankers Life and join defendants at the competitor. Bankers Life sued, under theories of breach of contract, misappropriation of trade secrets, and breach of fiduciary duties.[1] Defendants move to dismiss all claims. For the reasons below, that motion is denied.

---

[1] This court has jurisdiction because: (1) the amount in controversy exceeds $75,000; (2) Bankers Life is an Illinois citizen; and (3) defendants are all Nebraska citizens. [40] ¶¶ 31, 33, 35–42.

## I. Legal Standards

In deciding whether to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6), I construe the complaint in the light most favorable to plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal marks omitted). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich*, 722 F.3d at 915 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II. Facts[2]

Bankers Life sells insurance, typically to people over 65. FAC ¶ 1. Bankers Life invests substantial resources to cultivate its customer relationships. FAC ¶ 5. From face-to-face meetings, Bankers Life's salespeople learn detailed information about customers, including their insurance needs. FAC ¶ 5. It takes years to develop good customer relationships. FAC ¶ 5. Bankers Life's customer relationships are characterized by low turnover and long-term stability. FAC ¶ 5.

---

[2] The facts are taken from the first amended complaint [40], which is cited as "FAC."

About 90% of Bankers Life's policyholders renew their policies in a given year. FAC ¶ 5. The relationship between Bankers Life and its policyholders lasts an average of nine years. FAC ¶ 5.

Bankers Life's head office is in Chicago, and it has branch offices elsewhere, including Omaha. FAC ¶¶ 1, 34. Defendants are former Bankers Life employees, who all worked in Omaha. FAC ¶¶ 6–12. Berger, Dingledine, Dlugosh, and Montes were "sales agents." FAC ¶¶ 9–12. The other defendants held higher positions: Miller was a Branch Sales Manager, Parsons was a Unit Sales Manager, and Sanchez was a Unit Supervisor. FAC ¶¶ 6–8. All defendants signed contracts with Bankers Life. FAC ¶ 21. The contracts contained restrictive covenants, limiting defendants' rights to compete with Bankers Life (while employed, and for a period of time afterward). FAC ¶ 21. In particular, certain provisions limited defendants' rights to: (1) use Bankers Life's confidential information; (2) solicit Bankers Life's customers; or (2) solicit Bankers Life's employees. FAC ¶ 22.

In a single day, nine employees from the Omaha branch office—including all of the defendants—quit, to work for a competitor. FAC ¶¶ 2, 23, 76–83. Bankers Life contends that Miller, Parsons, and Sanchez (the defendants who held higher positions than sales agent) induced the other defendants to quit. FAC ¶¶ 23, 75. Bankers Life alleges that all defendants except Dlugosh took highly confidential information with them when they left. FAC ¶¶ 2, 24. Bankers Life also alleges that defendants have solicited customers to switch from Bankers Life to the competitor. FAC ¶¶ 2, 24–25, 85–131. Finally, Bankers Life alleges that, since leaving,

defendants have solicited additional Bankers Life employees to quit and join the competitor. FAC ¶¶ 26, 131.

III. Analysis

In Count I, Bankers Life asserts that Miller, Parsons, and Sanchez breached the agent-non-solicitation provisions of their contracts, by inducing the other defendants to quit. In Count II, Bankers Life asserts that all defendants except Dlugosh breached the confidentiality provisions of their contracts, by downloading and retaining Bankers Life's confidential information. In Count III, Bankers Life asserts that all defendants breached the customer-non-solicitation provisions of their contracts, by inducing customers to switch to the competitor. In Count IV, Bankers Life asserts that all defendants except Dlugosh misappropriated Bankers Life's trade secrets. And in Count V, Bankers Life asserts that Miller, Parsons, and Sanchez breached their fiduciary duties of loyalty, by downloading, retaining, and using Bankers Life's confidential information, and by inducing employees to quit and join the competitor.

### A. Breach of Contract (Counts I, II, and III)

#### 1. Choice of Law

Illinois choice-of-law rules apply. *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014). Illinois follows the Restatement (Second) of Conflict of Laws. *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill.2d 560, 568–69 (2000). Accordingly, in a contract action involving an express choice-of-law provision, "the law of the state chosen by the contracting parties will apply unless: (1) the chosen state has no substantial relationship to the parties or the transaction and there is

no other reasonable basis for the parties' choice, or (2) its application would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 389 Ill.App.3d 356, 363 (1st Dist. 2009) (quotation marks omitted) (quoting § 187 of the Restatement). The parties selected Illinois law, but defendants argue that Nebraska has a materially greater interest in this case and applying Illinois law would be contrary to Nebraska's fundamental policy. [47] at 5–7.

Nebraska's interest is materially greater than Illinois's. As defendants point out:

> [A]t all material times, all of the Defendants were citizens and residents of Nebraska. All of the Defendants performed their work in Nebraska. Each agreement attached to the First Amended Complaint names Nebraska as the primary territory to which the agreement applies. All of the alleged activities and "breaches" are claimed to have taken place in Nebraska, including the alleged contacting of Nebraska policyholders.

[47] at 7 (record citations omitted). This is sufficient. *See Brown & Brown, Inc. v. Mudron*, 379 Ill.App.3d 724, 728 (3d Dist. 2008).

But applying Illinois law would not be contrary to a fundamental policy of Nebraska. Defendants rely on cases in which the relevant states had meaningfully different laws concerning restrictive covenants in employment contracts. *See LKQ Corp. v. Fengler*, 2012 U.S. Dist. LEXIS 56091, *10–13 (N.D. Ill. 2012) (unlike Illinois, California has a strong public policy under which nearly all restrictive covenants in employment contracts are unenforceable); *Brown & Brown, Inc. v. Ali*, 592 F.Supp.2d 1009, 1044 (N.D. Ill. 2009) (in determining enforceability of

5

restrictive covenants in employment contracts, Illinois requires consideration of the hardship imposed on the employee; Florida prohibits that consideration); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F.Supp.2d 805, 816 (N.D. Ill. 2009) (same). Relevant to the present case, however, Nebraska and Illinois have similar views of such restrictive covenants. Both states will enforce such a covenant, but only if: (1) it is no greater than required to protect a legitimate business interest of the employer; (2) it does not impose an undue hardship on the employee; and (3) it is not injurious to the public. *Reliable Fire Equip. Co. v. Arredondo*, 358 Ill.Dec. 322, 325 (2011); *H & R Block Tax Servs. v. Circle A Enters.*, 269 Neb. 411, 417 (2005).

Defendants say that Illinois courts may modify overly broad restrictive covenants to make them enforceable, while Nebraska courts may not. [58] at 3–4. But Illinois courts are circumspect in their modification. In *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill.App.3d 437, 456–57 (1st Dist. 2007), while acknowledging that Illinois courts may sometimes modify covenants—under "some circumstances," after weighing the "key consideration" of fairness—the court ultimately concluded that judicial reformation should be "looked upon with suspicion." *Id.* at 456. Following *Cambridge*, several Illinois courts have refused to modify overly broad restrictive covenants. *See, e.g., Montel Aetnastak, Inc. v. Miessen*, 998 F.Supp.2d 694, 718 (N.D. Ill. 2014); *Critical Care Sys. v. Heuer*, 2014 IL App (2d) 130745-U, *34 (2d Dist. 2014); *Nw. Podiatry Ctr. v. Ochwat*, 371 Ill.Dec. 447, 459 (1st Dist. 2013).

6

So Illinois courts look skeptically at modifications, and may modify covenants only after ensuring that fairness is not harmed; Nebraska courts do not modify covenants. But small differences do not justify overriding the parties' choice to have Illinois law govern. *See Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994); *Curtis 1000 v. Suess*, 24 F.3d 941, 948 (7th Cir. 1994); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F.Supp.2d 398, 407 (N.D. Ill. 2001) (enforcing the parties' contractual choice, even though courts in the two relevant states differed slightly on their willingness to modify overly broad covenants). Accordingly, Illinois law governs the contract claims.

## 2. Adequacy of Consideration

Defendants argue that six of the seven defendants received inadequate consideration for signing their restrictive covenants, and thus the covenants are invalid. [47] at 11–12. Under traditional contract-law principles, Illinois courts analyze only the existence of consideration, not its adequacy. *Mudron*, 379 Ill.App.3d at 728. But in the context of postemployment restrictive covenants, courts depart from that rule and analyze adequacy. *Id*. An illusory promise is not adequate consideration. *Id*. Therefore, while continued employment alone can be adequate consideration, that is only so if such employment continues for "a substantial period of time." *Id*. Defendants argue that Illinois employs a bright-line rule that continued employment for less than two years is insufficient consideration for a restrictive covenant in an employment contract. [47] at 11–12; [58] at 8–9.

The Illinois Supreme Court has not spoken on this issue, but decisions from the Appellate Court of Illinois guide a prediction of how the Supreme Court would

7

rule. *See Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 680 n.11 (7th Cir. 2005). Two district courts in this district have undertaken the task of predicting how the Illinois Supreme Court would rule, but have reached opposite conclusions. *Instant Tech., LLC v. Defazio*, 2014 U.S. Dist. LEXIS 61232, *42–44 (N.D. Ill. 2014) (Holderman, J.) (adopting bright-line rule); *Montel Aetnastak*, 998 F.Supp.2d at 716 (Castillo, J.) (rejecting bright-line rule).

The Illinois appellate cases relied on by defendants, and by the court in *Instant Tech.*, suggest that two years of continued employment are *sufficient* to support a restrictive covenant; but they do not hold that two years are *necessary*. In a recent case concerning restrictive covenants, the Illinois Supreme Court cautioned against creating bright-line rules that turn sufficient facts into necessary ones. *Reliable Fire Equip.*, 358 Ill.Dec. at 332 (warning against the "understandable temptation . . . to view exemplary facts presented in particular cases as the outermost boundary of the inquiry."). The appellate cases that have found the length of employment insufficient involved periods of mere months. *See, e.g.*, *Fifield v. Premier Dealer Servs.*, 373 Ill.Dec. 379 (1st Dist. 2013) (three months); *Diederich Ins. Agency v. Smith*, 351 Ill.Dec. 792 (5th Dist. 2011) (three months); *Mudron*, 379 Ill.App.3d 724 (seven months); *Mid-Town Petroleum, Inc. v. Gowen*, 243 Ill.App.3d 63 (1993) (seven months). Because the periods of employment in those cases were so short, they do not support the conclusion that Illinois applies a bright-line rule that

8

two years is required (and any language in those cases suggesting otherwise is dicta).³

Recently, the Appellate Court of Illinois considered whether there was evidence of "additional consideration," that combined with 15 months of continued employment, could constitute adequate consideration for a postemployment restrictive covenant. *Prairie Rheumatology Assocs., S.C. v. Francis*, 2014 IL App (3d) 140338, *16–18 (3d Dist. 2014). The *Mudron* court similarly considered whether there was evidence of additional benefits, beyond continued employment. 379 Ill.App.3d at 729 ("[A]lthough Brown claims that Gunderson received additional employee benefits as consideration for the restrictive covenant, *no evidence was presented to establish with specificity* what those benefits were or how they differed from the benefits Gunderson was already receiving as an employee of WI. Thus, we conclude that the employment agreement is not supported by adequate consideration and that the restrictive covenant, therefore, is unenforceable against Gunderson.") (emphasis added). That these courts analyzed whether additional consideration existed undermines the notion that Illinois applies a bright-line rule requiring, in all cases, two years or more of continued employment.

When the Supreme Court of Illinois last opined on postemployment restrictive covenants, it wrote that "a restrictive covenant will be upheld if it contains a reasonable restraint and the agreement is supported by consideration." *Reliable Fire Equip.*, 358 Ill.Dec. at 325. The adequacy of consideration was not at

---

³ Indeed, in *Mid-Town*, the court stated that whether the seven-month term of continued employment was sufficient consideration was a question of fact. 243 Ill.App.3d at 71.

9

issue, so the court did not say more. It did, however, reject the appellate court's rigid approach to determining whether a restrictive covenant's scope was "reasonable," favoring instead a "rule of reason, grounded in the totality of circumstances," under which "[e]ach case must be determined on its own particular facts." *Id*. at 332. The Illinois Supreme Court would similarly reject a rigid approach to determining whether a restrictive covenant was supported by adequate consideration; it would not adopt a bright-line rule requiring continued employment for at least two years in all cases. Because defendants made no other argument concerning the adequacy of consideration, at this stage, the covenants do not fail for inadequate consideration.

### 3. Validity of Non-solicitation Provisions (Counts I and III)

In Count I, Bankers Life asserts that certain defendants breached their contracts by soliciting other Bankers Life agents to quit. In Count III, Bankers Life asserts that all defendants breached their contracts by inducing customers to switch from Bankers Life to the competitor. Defendants argue that Counts I and III should be dismissed because the non-solicitation covenants are unenforceable. [47] at 13–15; [58] at 10–13. Such a covenant is enforceable so long as it is "reasonable," and it "is reasonable only if [it]: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee, (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Reliable Fire Equip.*, 358 Ill. Dec. at 325.

In arguing that the non-solicitation covenants are unenforceable, defendants largely ignore *Reliable*, and refer to "tests" developed by the Appellate Court of Illinois—tests that the *Reliable* court explicitly said should not be considered exhaustive or rigid. *See Reliable Fire Equip.*, 358 Ill.Dec. at 332. Defendants misrepresent *Reliable*, by quoting the court's language that "the appellate court precedent for the past three decades remains intact," but leaving out the rest of the sentence: "but only as nonconclusive examples of applying the promisee's legitimate business interest, as a component of the three-prong rule of reason, and not as establishing inflexible rules beyond the general and established three-prong rule of reason."[4] *Compare* [58] at 11 n.4, *with Reliable*, 358 Ill.Dec. at 332.

*Reliable* instructs that whether a non-solicitation covenant is unenforceable is "based on the facts in each particular case." *Reliable Fire Equip.*, 358 Ill. Dec. at 325. Courts have repeatedly held that reasonableness cannot be determined at the motion-to-dismiss stage. *See, e.g., Stericycle, Inc. v. Carney*, 2013 U.S. Dist. LEXIS 97389, *22–23 (N.D. Ill. 2013); *DeFazio*, 2012 U.S. Dist. LEXIS 90911 at *17–21; *Nortek Prods. (Taicang) Ltd. v. FNA Grp., Inc.*, 2011 U.S. Dist. LEXIS 55360, *13

---

[4] By ignoring *Reliable*, defendants make arguments that are based on Illinois law of questionable authority. For example, defendants argue that "Under Illinois law, there are two ways an employer can establish a legitimate business interest sufficient to support a restrictive covenant: (1) by showing that it has a 'near-permanent relationship' with its customers, and that but for his employment, the employee would not have had access to those customers; or (2) by showing that the employee acquired the employer's confidential information and attempted to use that information for his own benefit." [47] at 14. But in *Reliable*, the Illinois Supreme Court said that "the two-factor test . . . in which a near-permanent customer relationship and the employee's acquisition of confidential information through his employment are determinative, *is no longer valid*." *Reliable*, 358 Ill.Dec. at 332 (emphasis added).

(N.D. Ill. 2011); *Baird & Warner Residential Sales, Inc. v. Mazzone*, 384 Ill.App.3d 586, 591–93 (1st Dist. 2008). Certainly, the complaint does not admit that the covenants are unreasonable or unenforceable—it alleges the opposite. *E.g.*, FAC ¶¶ 29, 151, 155, 161, 170, 173.

Defendants' motion to dismiss Counts I and III is denied. Defendants' challenge to the enforceability of the restrictive covenants can be brought again after factual development concerning: the relevant industry; the nature of the relationships between Bankers Life and its customers; the hardship that the covenants could cause defendants; any injury to the public; and any other circumstance that bears on the overall reasonableness of the covenants at issue.

### 4. Confidentiality of Information (Count II)

In Count II, Bankers Life asserts that all defendants except Dlugosh breached their contractual agreement not to disclose Bankers Life's confidential information. Defendants ask me to find that the relevant information was not confidential, and thus to dismiss the Count. On its face, that is a fact question, inappropriate for resolution at the motion-to-dismiss stage. Defendants rely heavily on *Rapp Ins. Agency, Inc. v. Baldree*, 231 Ill.App.3d 1038 (5th Dist. 1992), but the posture of that case highlights the impropriety of dismissing this case on the pleadings. In *Rapp*, the appellate court merely affirmed the denial of a preliminary injunction, a ruling that was entered after the trial court took evidence concerning the confidentiality of the relevant information. *Id*. at 1041. Here, no evidence has been taken; it would be improper to hold that because the information in *Rapp* was found—in the context of a preliminary injunction—to be non-confidential, that the

12

information here should also be found non-confidential on the pleadings, thereby disposing of Bankers Life's claim altogether. Accepting the complaint's allegations as true, the information at issue was confidential. *See, e.g.*, FAC ¶¶ 2, 24, 69, 163–64.

Defendants' reliance on *Del Monte* is also misplaced. Defendants rely on a portion of the opinion that concerns a claim for trade secret misappropriation, not breach of contract. [47] at 16; 616 F.Supp.2d at 820. Concerning breach of contract (for disclosing confidential information), the court denied the former employee's motion for summary judgment. *Del Monte*, 616 F.Supp.2d at 815. That is, even though the court found that the customer lists at issue did not constitute a trade secret, the employee could still be held liable for breaching a valid contract for disclosing information she had promised not to disclose.

Moreover, Count II includes allegations that defendants were obligated to return Bankers Life's property, but failed to do so. FAC ¶¶ 46, 52, 58, 163. Defendants give no reason why those allegations do not state a claim for breach of contract. Defendants' motion to dismiss Count II is denied.

### B. Trade Secret Misappropriation (Count IV)

Count IV of the complaint alleges misappropriation of trade secrets. The complaint specifically cited both Nebraska's "Trade Secrets Act" (NEB. REV. STAT. §§ 87-501 *et seq*.) and the "Illinois Trade Secrets Act" (765 ILL. COMP. STAT. §§ 1065

*et seq.*).[5] Defendants argue that Bankers Life has not stated a claim under either statute.

Defendants' primary argument is that Bankers Life doomed its claims by disclosing its purported trade secrets in the complaints filed in this case. [47] at 8, 15–16; [58] at 13–14. This argument fails for two reasons. First, Bankers Life says that the information disclosed in its complaints is not the information it alleges constitutes a trade secret. [53] at 20. At this stage, the plaintiff's allegations are what count; defendants cannot decide for themselves what Bankers Life's trade secrets are, and then say that they were disclosed in the complaint.

The second reason this argument fails is one of timing. Both Illinois and Nebraska limit "trade secrets" to information that is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy [or confidentiality]."[6] 765 ILL. COMP. STAT. § 1065/2(d)(2); NEB. REV. STAT. § 87-502(4)(b). So Bankers Life's claims would likely fail if it had disclosed its purported trade secrets before defendants' alleged misappropriation. *See Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 504 (7th Cir. 2011). But defendants cite no authority to support their view that even

---

[5] The complaint appears to allege violations of both the Illinois and the Nebraska statutes. This does not present a choice-of-law problem; the question for each statute is whether, by its own terms, it applies to the present case. *See Generac Corp. v. Caterpillar, Inc.*, 172 F.3d 971, 976 (7th Cir. 1999) (whether Wisconsin fair-dealership statute applies is decided by the statute's terms, not general choice-of-law rules); *Cromeens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 386–89 (7th Cir. 2003) (same, for franchise-disclosure statutes from Illinois, Texas, Montana, and Maine); *see also Wooley v. Bridgeview Bank Mortg. Co., LLC*, 2015 U.S. Dist. LEXIS 7663, *5–7 (N.D. Ill. 2015) (where plaintiffs brought claims under the wage-payment statutes of both Illinois and Kansas, the question was not a choice of law, but whether the Illinois statute applied extraterritorially).

[6] The Illinois statute includes the bracketed text; the Nebraska statute does not.

after a trade secret is stolen, its public disclosure bars a plaintiff from seeking remedies for its prior theft.

Aside from arguing that Bankers Life's complaint in this case disclosed the relevant information, defendants also argue that the information is readily duplicable "by reference to telephone directories or industry publications." [47] at 16. In making this argument, defendants ask me to accept their version of what the trade secrets are, and also to accept their allegation that the information was readily duplicable. Doing so would be inappropriate at the motion-to-dismiss stage. Notably, the cases defendants rely on were all decided after factual development. *See Rapp*, 231 Ill.App.3d 1038 (affirming denial of preliminary injunction, after taking evidence); *Del Monte*, 616 F.Supp.2d 805 (summary judgment); *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill.App.3d 557 (1st Dist. 1992) (affirming denial of preliminary injunction, after taking evidence); *First Express Servs. Grp., Inc. v. Easter*, 286 Neb. 912 (2013) (affirming jury verdict); *Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701 (2001) (bench trial); *Sys. Dev. Servs. v. Haarmann*, 389 Ill.App.3d 561 (5th Dist. 2009) (bench trial); *Carbonic Fire Extinguishers, Inc. v. Heath*, 190 Ill.App.3d 948 (2d Dist. 1989) (reversing grant of preliminary injunction, after taking evidence).

Under the right circumstances, customer lists can be trade secrets. The Illinois statute explicitly says so. 765 ILL. COMP. STAT. § 1065/2(d). And courts applying both Illinois and Nebraska law say so too. *See, e.g.*, *Buckley v. Abuzir*, 380 Ill.Dec. 624, 638 (1st Dist. 2014) (reversing grant of motion to dismiss, because

improperly acquiring customer lists could violate the Illinois Trade Secrets Act); *First Express*, 286 Neb. at 926 (distinguishing *Home Pride Foods*, 262 Neb. 701, in which the information on the list was not ascertainable through proper means, and knowledge of the information would permit competitors to undercut the plaintiff's prices); *Radiology Servs., P.C. v. Hall*, 279 Neb. 553, 565 (2010) ("A customer list can be a trade secret in some circumstances. . . . Where time and effort have been expended to identify particular customers with particular needs or characteristics, courts will prohibit others from using this information to capture a share of the market.") (citation omitted); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 728 n.8 (7th Cir. 2003) (citing cases for the proposition that customer lists can be trade secrets if sufficient effort was required to compile them); *Curtis 1000*, 24 F.3d at 947 (7th Cir. 1994) ("A customer list can be a trade secret, but only if serious efforts are made to keep it secret."). Whether this case presents "the right circumstances" is a question that cannot be answered without factual development. Accordingly, defendants' motion to dismiss Count IV is denied (whether plaintiff is pursuing a Nebraska claim, an Illinois claim, or both).

### C. Duty of Loyalty (Count V)

Count V asserts that Miller, Parsons, and Sanchez each breached a duty of loyalty owed to Bankers Life. Illinois law applies, because that's the law that applies under the "internal affairs doctrine," which Illinois follows, *CDX Liquidating Trust v. Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011) (citing *Newell Co. v. Petersen*, 325 Ill.App.3d 661 (2d Dist. 2001)), and because the parties have not identified a relevant conflict (and under such circumstances, a federal

court applies the law of its forum state), *Kochert v. Adagen Medical Int'l., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007).[7]

The alleged breaches resulted from conduct that includes the following (FAC ¶ 190):

1. downloading Bankers Life's confidential and trade secret information while still employed by Bankers Life; retaining that information after employment ended; and using that information to compete with Bankers Life; and

2. while employed by Bankers Life, inducing other employees to quit and join the competitor.

Defendants argue that Bankers Life's allegations concerning inducement of agents to quit cannot be taken as true, because they are internally inconsistent. [47] at 17–18. Specifically, defendants argue that the following allegations are inconsistent:

- "In disregard of their contractual obligations to Bankers Life, before resigning their employment with Bankers Life, BSM Miller, USM Parsons, and Unit Supervisor Sanchez solicited and induced Berger, Dingledine, Dlugosh, Montes, and other agents working on behalf of Bankers Life to terminate their agency relationships with Bankers Life in order to work for a Bankers Life competitor." FAC ¶ 23.

- "Sometime before September 27, 2013, BSM Miller, USM Parsons, and Unit Supervisor Sanchez solicited and induced each other, as well as Berger, Dingledine, Dlugosh, Montes and others to resign their employment or agency relationship with Bankers Life." FAC ¶ 75.

Defendants argue that the words "each other, as well as" make the allegation in paragraph 75 inconsistent with the one in paragraph 23. I disagree. Paragraph 75

---

[7] The parties only briefed the choice-of-law question in the context of the contract claims. If the contractual choice-of-law provisions are broad enough to cover this duty-of-loyalty claim, then Illinois law would still apply (for the same reasons that Illinois law governs the contract claims).

17

says what paragraph 23 does (that Miller, Parsons, and Sanchez induced other agents to leave Bankers Life), and makes the additional allegation that Miller, Parsons, and Sanchez induced each other to quit. That additional allegation is not inconsistent with also inducing other agents to quit.

Defendants also argue that the duty-of-loyalty claim is preempted by the Illinois Trade Secrets Act. [47] at 17. Although the Illinois Supreme Court has not spoken on the issue, the Appellate Court of Illinois has, and has rejected defendants' view:

> As a general rule, employees may plan, form, and outfit a competing corporation while still working for the employer, but they may not commence competition. In addition, absent fraud, *a contractual restrictive covenant, or the improper taking of a customer list*, former employees may compete with their former employers and solicit former customers provided there was no demonstrable business activity before termination of their employment. *This general rule, however, does not apply to corporate officers, who owe a fiduciary duty of loyalty* to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed. This duty of loyalty is not inconsistent with the officer's right to enter into competition with a former employer upon leaving such employment, but *the officer's resignation does not sever liability for transactions that began (or were based upon information acquired) while the officer was employed and completed after the officer resigned*. Although plaintiffs' claim includes allegations that Wagner used trade secrets in preparing the bid, this claim is not dependent upon the misappropriation of trade secrets. Plaintiffs also claim, *inter alia,* that Wagner established a competing business while still employed by Alpha, *solicited Alpha's employees to work for the competing business*, and converted various property of Alpha. Therefore, the Trade Secrets Act does not preempt this claim, and the trial court erred in dismissing plaintiffs' breach of fiduciary duty claim against Wagner.

*Alpha Sch. Bus Co. v. Wagner*, 391 Ill.App.3d 722, 736–37 (1st Dist. 2009) (emphasis added). The appellate court's analysis is persuasive, and it accords with several cases which hold that a claim for breach of a fiduciary duty is not preempted by the trade secret statute where more is alleged than just the taking of trade secret information. *E.g.*, *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404–05 (7th Cir. 2005); *Montel Aetnastak*, 998 F.Supp.2d at 720–21; *Network Cargo Sys. Int'l v. Pappas*, 2014 U.S. Dist. LEXIS 58552, *13–15 (N.D. Ill. 2014); *SBS Worldwide, Inc. v. Potts*, 2014 U.S. Dist. LEXIS 15763, *26–27 (N.D. Ill. 2014).

Here, Bankers Life alleges more than the mere taking of trade secrets. It alleges that while Miller, Parsons, and Sanchez worked for Bankers Life, they improperly took confidential information and induced other employees to quit, as part of a scheme to compete; and they continued using the improperly acquired information once they began competing. Based on the precedent cited above, their breach-of-loyalty claim is not preempted by the Illinois Trade Secrets Act. Accordingly, defendants' motion to dismiss Count V is denied.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied.

ENTER:

Manish S. Shah
United States District Judge

Date: 2/6/15